UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESULAND GARIOTE,<br><br>        Petitioner,<br><br>        v.<br><br>WARDEN, CALIFORNIA CITY<br>DETENTION FACILITY, et al.,<br><br>        Respondents. | No. 1:26-cv-02600-DAD-CKD<br><br>ORDER GRANTING PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER AND DENYING PETITIONER'S EMERGENCY MOTION AS MOOT<br><br>(Doc. Nos. 8, 17) |

This matter is before the court on petitioner's motion for emergency return to the United States (Doc. No. 8) and motion for temporary restraining order (Doc. No. 17.)   For the reasons explained below, the court will convert petitioner's motion for temporary restraining order (Doc. No. 17) into a motion for preliminary injunction and will grant that motion.  The court will also deny petitioner's emergency motion (Doc. No. 8) as having been rendered moot by this order.

**BACKGROUND**

Petitioner Jesuland Gariote, A-File No. 246-736-497, is a native and citizen of Haiti (Doc. No. 1 at ¶ 23) who entered the United States on or about February 21, 2023 (Doc. No. 10 at 5). On February 21, 2023, petitioner was provided with a Notice to Appear for removal proceedings and was paroled into the United States.  (Doc. No. 19 at 17, 59.)  On February 7, 2024, an

1

immigration judge ("IJ") terminated petitioner's removal proceedings without prejudice because the Department of Homeland Security ("DHS") did not prove by clear and convincing evidence that petitioner[1] is removable as charged.  (*Id.* at 22.)  On April 18, 2024, petitioner applied for asylum.  (*Id.* at 59.)  On October 8, 2024, Immigration and Customs Enforcement ("ICE"), Enforcement and Removal Operations ("ERO") received an Interpol Blue Notice, stating that petitioner was wanted for questioning in Chile in relation to a charge of "injury causing death/manslaughter/murder."[2]  (*Id*. at 58, 62.)

On March 5, 2025, petitioner was contacted by ICE officers while travelling in a car. (Doc. No. 1 at ¶ 23.)  Petitioner told the officers he had a pending asylum case and a work permit from USCIS which would not expire until 2029.  (*Id.*)  Petitioner was detained without a warrant or an opportunity to contest the reason for his re-detention.  (*Id.*)  That same day, petitioner was provided a Notice to Appear for removal proceedings alleging that he was previously paroled into the United States for one year pending removal proceedings and that he is an immigrant not in possession of a valid travel document.  (Doc. No. 10 at 5.)  The day that petitioner was re-detained, he requested that an IJ review ICE's custody determination.  (Doc. No. 19 at 25.)  It does not appear that petitioner's custody was reviewed until over six months later after an additional request was made by his attorney.

On August 19, 2025, petitioner through his counsel, requested a custody re-determination hearing in immigration court, but withdrew that request on August 28, 2025.  (*Id.* at 27–40.) Thereafter, petitioner renewed his request for a custody re-determination hearing, and on

[1]  In immigration court documents, petitioner Gariote is referred to as the respondent.  For consistency, the court refers to petitioner Gariote as "petitioner" throughout this order.

[2]  Petitioner points out that, according to Interpol's website providing information regarding color-coded notices, the blue notice is meant "to collect information about a person's identity, location or activities in relation to a criminal investigation."  (Doc. No. 21 at 6.)  When a person is wanted for prosecution or to serve a sentence, Interpol issues a red notice.  (*Id.*)  The specific blue notice relating to petitioner states its purpose is to "identify, locate, [or] obtain information" but also suggests he may have been charged in relation to a death in Chile.  (Doc. No. 19 at 62.) "A Blue Notice is a request pursuant to which Interpol member countries stop a suspect traveling through their country to obtain information about the suspect.  A Blue Notice impedes a suspect's travel."  *United States v. Weber*, 320 F.3d 1047, 1049 (9th Cir. 2003).

September 15, 2025, he received a custody re-determination hearing before an IJ and was denied release based on the IJ's finding that he posed a danger to the community and a flight risk. (*Id.* at 46.)

On March 20, 2026, an IJ determined that petitioner is removable, denied petitioner's applications for asylum and withholding of removal, and ordered petitioner removed to Haiti. (Doc. No. 10 at 10–13.)  The written order stated that the Department of Homeland Security ("DHS") and petitioner waived appeal, but the order also stated that any appeal was due to be filed by April 20, 2026.  (*Id.* at 13.)  Notably, on March 30, 2026, petitioner, proceeding *pro se*, had filed a timely notice of appeal from the IJ's decision to the Board of Immigration Appeals ("BIA").  (*Id.* at 15.)  Indeed, on April 17, 2026, DHS filed an emergency motion in immigration court for summary dismissal of petitioner's appeal to the BIA due to his purported previous waiver of appeal.  (*Id.* at 23.)

On April 6, 2026, petitioner, proceeding *pro se*, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 in this court challenging his detention by United States Immigration and Customs Enforcement.  (Doc. No. 1.)  That same day, petitioner filed a motion to appoint counsel.  (Doc. No. 3.)  On April 11, 2026, petitioner was transferred from California City, California to Guantanamo Bay, Cuba, for "staging and eventual removal to Haiti."  (Doc. No. 19 at 9.)  On April 13, 2026, the assigned magistrate judge granted petitioner's motion to appoint counsel (Doc. No. 6) and on April 16, 2026, counsel was appointed on his behalf *nunc pro tunc* to April 13, 2026 (Doc. No. 7).

On April 16, 2026, petitioner's appointed counsel filed an emergency motion in this court requesting petitioner's return from Guantanamo Bay, Cuba.  (Doc. No. 8.)  On April 20, 2026, respondents filed a response to petitioner's motion for emergency relief.  (Doc. No. 10.)  On April 21, 2026, petitioner filed a reply in support of his motion for emergency relief.  (Doc. No. 13.)

On April 28, 2026, petitioner filed a motion for temporary restraining order requesting his immediate release.  (Doc. No. 17.)  On April 29, 2026, the court set a briefing schedule as to that motion and directed respondents to substantively address the court's jurisdiction in this matter and the circumstances of petitioner's parole into the United States.  (Doc. No. 18.)  On May 1,

3

2026, respondents filed their opposition to petitioner's motion for temporary restraining order.[3] (Doc. No. 19.)  On May 4, 2026, the parties filed a joint status report, in which they advise that petitioner was scheduled to return to the United States from Guantanamo Bay, Cuba on May 7, 2026.[4]  (Doc. No. 20 at 1.)  On May 5, 2026, petitioner filed his reply in support of his motion for temporary restraining order.  (Doc. No. 21.)

## LEGAL STANDARD

The standard governing the issuing of a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction.  *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  "The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'"  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011) ("After *Winter*, 'plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction.'"); *Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).  A plaintiff seeking a preliminary injunction must make a showing on all four of these prongs.  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  The Ninth Circuit has also held that "[a] preliminary injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor."  *Id.* at 1134–35 (citation omitted).  The party seeking the injunction bears the burden of proving these elements.  *Klein v.*

---

[3]  The court will convert petitioner's motion for temporary restraining order to a motion for preliminary injunction because respondents have stated they do not intend to file additional briefing in relation to petitioner's request for injunctive relief.  (Doc. No. 19 at 4 n. 3.)  "In general, temporary restraining orders are governed by the same standard applicable to preliminary injunctions." *Immigrant Legal Res. Ctr. v. City of McFarland*, 472 F. Supp. 3d 779, 783 (E.D. Cal. 2020) (cleaned up).

[4]  The court will deny petitioner's emergency motion for his return from Guantanamo Bay, Cuba, as having been rendered moot by petitioner's scheduled May 7, 2026, return to the United States.

*City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009); *see also Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (citation omitted) ("A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief."). Finally, an injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

The likelihood of success on the merits is the most important *Winter* factor. *See Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017). Plaintiff bears the burden of demonstrating that he is likely to succeed on the merits of his claims or, at the very least, that "serious questions going to the merits were raised." *All. for Wild Rockies*, 632 F.3d at 1131.

**DISCUSSION**

**A.    Jurisdiction**

"The federal courts are under an independent obligation to examine their own jurisdiction[.]" *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990), *holding modified by City of Littleton, Colo. v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774 (2004). Habeas jurisdiction lies in the district of confinement. *Doe v. Garland*, 109 F.4th 1188, 1198 (9th Cir. 2024) (holding the district court's exercise of jurisdiction over an immigration habeas petition was improper because the petitioner was confined in a different district). Moreover, habeas jurisdiction is established at the time of the filing of the petition for relief. *Johnson v. Gill*, 883 F.3d 756, 761 (9th Cir. 2018) (holding that the petitioner's transfer to another facility did not destroy the jurisdiction established at the time of filing). "[W]hen the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." *Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004) (citing *Ex parte Endo*, 323 U.S. 283 (1944)).

Respondents have conceded that petitioner properly filed his petition in the U.S. District Court for the Eastern District of California because, at the time of filing, petitioner was detained at the California City Detention Center and properly named the warden of the California City

Detention Center as a respondent.  (Doc. No. 19 at 6.)  Respondents have further conceded that this court retains jurisdiction over the petition despite petitioner's subsequent transfer outside of the Eastern District of California.[5]  (*Id.*)   The court agrees and finds that it retains jurisdiction over the pending petition.  *See Alonso Sanchez v. Hermosillo*, No. 2:25-cv-02152-TMC, 2025 WL 3171362, at *2 (W.D. Wash. Nov. 13, 2025) ("The fact that he has since been transferred does not divest the Court of jurisdiction to determine the legality of his custody.")

**B.        Likelihood of Success on the Merits**

Petitioner argues he is likely to succeed on the merits of his claims because he is subject to discretionary detention pursuant to 8 U.S.C. § 1226(a) while his appeal from the IJ's March 20, 2026 order finding him removable, denying his applications for asylum and withholding of removal, and ordering him removed to Haiti is pending before the BIA.  (Doc. No. 17 at 6.) Respondents argue petitioner is not likely to succeed on the merits of his claims because he is subject to mandatory detention since his removal order is final and he is within the 90-day removal period pursuant to 8 U.S.C. § 1231(a)(2).  (Doc. No. 19 at 4.)  For the reasons explained below, the court concludes that respondents are incorrect.

The applicable detention authority in this case hinges on whether petitioner is currently subject to a removal order that has become final.  In this regard, the Ninth Circuit has explained as follows:

> Section 1231(a) applies to detention after the entry of a final order of removal.  In contrast to Subsections A and C [of section 1226], Section 1231(a) does not apply to detention during the pendency of administrative or judicial removal proceedings. Section 1231 instead governs detention during a ninety-day "removal period" after the conclusion of removal proceedings.  Id. § 1231(a)(1)–(2). This "removal period" begins on the latest of either (1) the date a noncitizen's "order of removal becomes administratively final," (2) the date of a court's final order, if the noncitizen's removal order is

---

[5]  As noted, petitioner was scheduled to return to the United States from Guantanamo Bay, Cuba, on May 7, 2026.  (Doc. No. 19 at 5.)  The parties have not informed the court whether petitioner has in fact been returned to the United States.  To the extent petitioner has not yet returned to the United States, the court notes that the Supreme Court has previously held that § 2241 "confers on the District Court jurisdiction to hear petitioners' habeas corpus challenges to the legality of their detention at the Guantanamo Bay Naval Base." *Rasul v. Bush*, 542 U.S. 466, 484 (2004), *judgment entered,* No. 04A41, 2004 WL 7372970 (U.S. July 16, 2004).

judicially reviewed and this court stays the noncitizen's removal, or (3) the date the noncitizen is released from criminal detention or confinement.  Id. § 1231(a)(1)(B)(i)–(iii).

*Avilez v. Garland*, 69 F.4th 525, 530–531 (9th Cir. 2023).  Here, respondents and petitioner agree that petitioner's appeal is pending before the BIA and that his removal is administratively stayed pending that appeal pursuant to 8 C.F.R. § 1003.6(a).  (*See* Doc. Nos. 10 at 2; 21 at 4.)  Because administrative proceedings are still pending, the removal period has not begun and petitioner is not subject to mandatory detention pursuant to 8 U.S.C. § 1231(a)(2).  *See Muhammad A. v. Noem*, No. 1:26-cv-00950-KES-SKO, 2026 WL 395900, at *1 (E.D. Cal. Feb. 12, 2026) ("Here, because the order of removal is on appeal to the BIA, the order of removal is not administratively final, and therefore, the removal period has not yet begun.") (collecting cases).

Petitioner argues that he should be immediately released because his initial detention violated his due process rights and his continued detention absent a bond hearing where respondents bear the burden of proof to show he is a danger and flight risk is unlawful.  (Doc. No. 17 at 4–6.)  Respondents limited their opposition to the pending motion to arguing only that petitioner is subject to mandatory detention pursuant to § 1231(a)(2) and have not made any effort to respond to petitioner's arguments that his initial detention and continued detention are unlawful.[6]  (*See* Doc. Nos. 10, 19.)  The court incorporates its reasoning in *Chavarria v. Chestnut*, No. 1:25-cv-01755-DAD-AC, 2025 WL 3533606 (E.D. Cal. Dec. 9, 2025) and finds that petitioner obtained a liberty interest in his continued release when he was released on parole

---

[6]  While the narrative of deportation officer Martinez suggests that petitioner was considered a public safety risk due to the Interpol blue notice (Doc. No. 19 at 59), respondents do not argue that this was the reason for petitioner's re-detention (*See* Doc. Nos. 10, 19).  Further, nothing before the court suggests that petitioner was ever informed that the blue notice was the reason for his re-detention or given an opportunity to contest any allegations in relation to the blue notice.  For example, petitioner's motion for bond and custody redetermination filed in immigration court by his attorney on August 19, 2025 does not mention the blue notice, nor does the IJ's order denying petitioner's release on September 15, 2025.  (Doc. No. 19 at 27–38, 46.)  Therefore, there is simply no evidence before this court that the blue notice played any part in petitioner's re-detention.  *See Bogomazov v. United States Dep't of Homeland Sec.*, No. 1:20-cv-24482, 2022 WL 769801, at *12 n. 6 (S.D. Fla. Feb. 27, 2022), *report and recommendation adopted*, No. 20-cv-24482, 2022 WL 767104 (S.D. Fla. Mar. 14, 2022) (noting that DHS policy dictates that an Interpol Notice "is not sufficient to support an arrest").

pursuant to § 1182(d)(5) and was therefore entitled to due process protections prior to his re-detention. The court further incorporates its reasoning set forth in *Galkin v. Albarran*, No. 2:26-cv-02351-DAD-CSK, 2026 WL 878617 (E.D. Cal. Mar. 31, 2026), where this court concluded that petitioner's immediate release was the proper remedy because respondents had failed to identify a statutory basis or legal authority demonstrating that any purported change in circumstances could serve as a basis for re-detention following the petitioner's previous release on parole. Finally, although not specifically argued by respondents, petitioner's bond hearing more than six months after his re-detention despite having been previously released on parole does not cure the violation of procedural due process. See *Zaitsev v. Warden*, No. 2:26-cv-00454-SPG-AS, 2026 WL 1047942, at *7–8 (C.D. Cal. Apr. 15, 2026) (finding that a post-detention bond hearing was insufficient to cure the violation of procedural due process created by not providing notice or a pre-detention hearing and ordering the immediate release of the petitioner). For these reasons, the court finds that petitioner has therefore established that he is likely to succeed on the merits of his claims.

**B.    Irreparable Harm, Balance of Equities, and Public Interest**

This court has previously analyzed the irreparable harm, balance of the equities, and public interest in similar circumstances, specifically regarding improper revocation of detention and the ongoing harm of unlawful detention. *N.D.N. v. Bondi*, No. 1:25-cv-01587-DAD-CKD, 2025 WL 3251102, at *7 (E.D. Cal. Nov. 21, 2025). The court incorporates by reference that analysis here and finds that consideration of irreparable harm, balance of equities, and public interest factors all favor the granting of petitioner's motion for a temporary restraining order and preliminary injunction.

For the reasons above,

1.    Petitioner's motion for temporary restraining order (Doc. No. 17) is CONVERTED into a motion for preliminary injunction and is GRANTED as follows:

   a.    Respondents are ORDERED to immediately release petitioner Jesuland Gariote, A-File No. 246-736-497, from respondents' custody;

8

       b.     Respondents are ENJOINED AND RESTRAINED from re-detaining petitioner for any purpose, absent exigent circumstances *or* as required by 8 U.S.C. § 1231(a)(2), without providing petitioner notice and a pre-detention hearing before an immigration judge;

2.    Petitioner's emergency motion to return him to the United Sates (Doc. No. 8) is hereby DENIED as having been rendered moot in light of petitioner's scheduled May 7, 2026 return to the United States;

3.    Counsel for respondents is directed to forward a copy of this order to the detention center where petitioner is being held following his May 7, 2026 return to the United States; and

4.    The petition for writ of habeas corpus (Doc. No. 1) is referred back to Magistrate Judge Carolyn K. Delaney for further proceedings.

IT IS SO ORDERED.

Dated:   **May 13, 2026**                                _Dale A. Drozd_
                                            DALE A. DROZD
                                          UNITED STATES DISTRICT JUDGE